IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SEAN DARNELL NELSON, 141070 | Complaint for Violation of Civil Rights |
| **Plaintiff,** | (Prisoner Complaint) |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: **XXX** Yes ☐ No <br> *(check one)* |
| -against- <br> R.J. REYNOLDS TOBACCO COMPANY, INC., BROWN & WILLIAMSON TOBACCO CORPORATION, LORILLARD TOBACCO COMPANY AND PHILLIP MORRIS USA, INC., FOREIGN CORPORATION(S), DEFENDANT(S). | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

When submitted for filing, your complaint should be accompanied by the full filing fee or an application to proceed in *forma pauperis*.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name            SEAN DARNELL NELSON, #141070

All other names by which you have been known:

"LATIF"

ID Number            # 141070

Current Institution    BROAD RIVER CORRECTIONAL INSTITUTIONAL

Address            4460 BROAD RIVER ROAD, RICHLAND COUNTY

COLUMBIA, SOUTH CAROLINA 29210-4012

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name            R.J. REYNOLDS TOBACCO COMPANY, INC.,

Job or Title        TOBACCO INDUSTRY MANUFACTURER
(if known)

Shield Number        "UNKNOWN"

Employer        REYNOLDS AMERICAN, INC.

Address            401 NORTH MAIN STREET, WINSTON, SALEM

NORTH CAROLINA 27101

☒ Individual capacity        ☒ Official capacity

Defendant No. 2

Name            BROWN & WILLIAMSON TOBACCO CORPORATION
OF WHOM HAS MERGED WITH R.J. REYNOLDS
TOBACCO COMPANY, INC. (NOW KNOWN AS
REYNOLDS AMERICAN, INC.)

2

| | |
|---|---|
| Job or Title (if known) | **TOBACCO INDUSTRY MANUFACTURER** |
| Shield Number | **"UNKNOWN"** |
| Employer | **REYNOLDS AMERICAN, INC.** |
| Address | **401 NORTH MAIN STREET, WINSTON SALEM** **NORTH CAROLINA 27101** |

☒ Individual capacity        ☒ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | **LORILLARD TOBACCO COMPANY** |
| Job or Title (if known) | **TOBACCO INDUSTRY MANUFACTURER** |
| Shield Number | **"UNKNOWN"** |
| Employer | **REYNOLDS AMERICAN, INC.** |
| Address | **401 NORTH MAIN STREET, WINSTON SALEM** **NORTH CAROLINA  27101** |

☒ Individual capacity        ☒ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | **PHILLIP MORRIS USA, INC.** |
| Job or Title (if known) | **TOBACCO INDUSTRY MANUFACTURER** |
| Shield Number | **"UNKNOWN"** |
| Employer | **PHILLIP MORRIS USA, INC.** |
| Address | **6601 WEST BROAD STREET,** **RICHMOND, VIRGINIA 23230** |

☒ Individual capacity        ☒ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐    Federal officials (a *Bivens* claim)    **NO**

☐    State or local officials (a § 1983 claim)    **NO**

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

**Proposed Pro'se Plaintiff's claims are "not" being brought 42 U.S.C.A. Section 1983, but Plaintiff's claims are brought 28 U.S.C.A. Section(s) 1331, 1332, 1367 and under 18 U.S.C.A. Section 1343, of Radio, Televised & Wire Communication Fraud**

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

**(Furthermore), Proposed Pro'se Plaintiff's claims are brought under the forum State Code of Laws of South Carolina Civil Remedies & Procedure Act of statutory provisions of § 15-3-530 (5),(7) et seq.; and under § 36-2-803 et seq., and under the Unfair Trade & Commercial Practice Act of § 39-1-20 et seq.;**

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

**"REFERRED TO PLAINTIFF'S ATTACHED SHEET, DETAIL EXPLANATION"**

**(SEE, ATTACHED SHEET(S)**

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐    Pretrial detainee    **DOES NOT APPLY**

☐    Civilly committed detainee    **DOES NOT APPLY**

☐    Immigration detainee    **DOES NOT APPLY**

4

    **XXX**      Convicted and sentenced state prisoner

    ☐      Convicted and sentenced federal prisoner

    ☐      Other *(explain)* _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case.    Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.    You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.    Do not cite any cases or statutes.    If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.    Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

> **Proposed Pro'se Plaintiff's claims arosed based upon and through recently discovery, information and belief, on/or about, Friday, April 08, 2022, I read an Tobacco Industry Newspaper Article Ad, of Admiiting that the "Big Tobacco To Run Ads In Newspapers and on T.V. Admitting Their Lies," That**

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

> **Smoking Cigarettes "does" cause lung cancer and premature death;" Claims arosed in the Institution and outside the Institution, on/or about, April 08, 2022; Plaintiff had no**
>
> **(knowledge)** that the Tobacco Industry Corporations intentionally lied, **deceive and misrepresented the American members of the public, including the Proposed Pro'se Plaintiff, herein;**

C.    What date and approximate time did the events giving rise to your claim(s) occur?

> **"The same as above-April 08, 2022."**
>
> **"(See, Attached Sheet(s)"**

D.    What are the facts underlying your claim(s)?    *(For example:    What happened to you? Who did what?    Was anyone else involved?    Who else saw what happened?)*

> **See, Attached Sheet)**

ATTACHED SHEET PAGE ONE (1)
PROPOSED PRO'SE PLAINTIFF'S COMPLAINT
STATEMENT OF CLAIM, IV.
JURISDICTION I.

## I JURISDICTION

1). Plaintiff hereby, avers that his claims are brought under the United States Code of Annotated (U.S.C.A.) Statutory provisions of diversity and supplemental jurisdiction of Title 28 U.S.C.A. of Section(s) 1331, 1332, 1367 and under Title 18 U.S.C.A. of Section 1343, of Radio, Televise & Wire Communication Fraud; and Plaintiff's claims are brought under the South Carolina Statutory provisions of § 36-2-803 et seq.. of specific and general personal jurisdiction; and under § 39-1-20 et seq.;

2). Including but not limited to the South Carolina Civil Remedies & Procedure Act of § 15-3-530 (5),(7) et seq., of Intentional Fraud, Intentional Fraudulent Misrepresentation, Intentional Fraudulent In The Inducement, Intentional Fraudulent Concealment, Civil Conspiracy To Commit Fraud And Concealment, Negligent Failure To Warn and Negligent/Grossly Negligent, and under the respondeat superior, equitable estoppel, Intentional Fraudulent Concealment Tolling Doctrine, and under the Continuous Tort of Wrongful Conduct, the S.C. Non-Economical and Economical Damage Award of § 15-32-210 et seq., Punitive Damages Award of § 15-32-510 et seq., herein and under Article 3, of Section 2, Clause 1, Plaintiff having "legal standing" to file suit, and under the "Equal Protection of the Laws, of Due Process Clause, under both the 5th and 14th Amendment of the U.S. Constitution.

## II. PARTIES INVOLVED
### PLAINTIFF, SEAN DARNELL NELSON

3). Pro'se Proposed Plaintiff, Sean Darnell Nelson, is an affirmative natural born citizen and resident, of Charleston County, Charleston, South Carolina, born in Bronzx, New York, reared in Charleston, South Carolina and natural biological parents, Doris Nelson, Mother, and deceased Father, Donnie McDonald of Charleston, South Carolina; Plaintiff is an natural born citizen in the United States of America; 28 U.S.C.A. of Section(s) 1331, 1332 and 1367;

4). Plaintiff started smoking Kools menthol filtered cigarette brands at the age of 9 (Nine), from 1978 to 1982, Kools cigarettes were manufactured

ATTACHED SHEET, CONTINUED PAGE TWO (2)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PARTIES INVOLVED, II.

by Defendant, Brown & Williamson Tobacco Corporation; smoked Newport menthol filtered cigarette brands at the age of 13 (Thirteen) years old, from 1982 to 1997, which were manufactured by Defendant, Lorillard Tobacco Company, of whom has "merged" with Defendant, R.J. Reynolds Tobacco Company, Inc., (Now Known As Reynolds American, Inc.); Plaintiff smoked Marlboro menthol filtered cigarette brands, manufactured by Defendant, Phillip Morris USA, Inc. (Formerly Known As Altria Group, Inc.), at the age of 25 (Twenty Five) years old, from 1997 to 2001; smoked Winston menthol filtered cigarettes, Salem cigarettes and Camel cigarette brands, at the age of 29 (Twenty Nine) to 2008, while incarcerated, and when the South Carolina Department of Corrections ("SCDC") stop selling cigarettes in their Canteen; smoked Doral cigarettes as well, during the same time, manufactured by Defendant, R.J. Reynolds Tobacco Company, Inc. (Now Known As Reynolds American, Inc.); Plaintiff also smoked "buglers" (Loose Tobacco, Roll-Own-Your-Own);

## II. PARTIES INVOLVED
### DEFENDANT. R.J. REYNOLDS TOBACCO COMPANY, INC. (NOW KNOWN AS REYNOLDS AMERICAN, INC.)

5). Defendant, R.J. Reynolds Tobacco Company, Inc. (Now Known As Reynolds American, Inc.), is an affirmative incorporated non-residential foreign Tobacco Industry Manufacturer citizen in the State of North Carolina; and an affirmative incorporated citizen in the United States of America, and at such times, had, did and continue doing it's principal place of business at 401 North Main Street, Winston Salem, North Carolina 27101, and throughout the forum State of South Carolina, including Charleston County, Charleston, South Carolina and Richland County, Columbia, South Carolina "where" the aforesaid Plaintiff is currently confined and incarcerated within the South Carolina Department of Corrections ("SCDC"); Title 28 U.S.C.A. of Section(s) 1331, 1332, 1367;

6). Defendant, R.J. Reynolds Tobacco Company, Inc. (Now Known As Reynolds American, Inc.), did knowingly took affirmative steps to manufactured, design, caused to be distributed directly or indirectly, transferred, transported, marketed, promoted, advertised, supplied and sold, including but not limited to, its' Camel, Winston and Salem cigarette brands to the

ATTACHED SHEET, CONTINUED PAGE THREE (3)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PARTIES INVOLVED, II.

forum State of South Carolina's general market places' Food/Supplies
Supermarkets, including but not limited to, Winn Dixie Stores, Piggly
Wiggly, Food Lion, Bi-los, Circle-K, 7-Eleven Convenient (Retailers)
Stores, Kroger Savon (Retailers) Stores and Walmart, K-Mart, "where"
Defendant's Camels, Winstons and Salem cigarette brands were affirmative
made available and accessible to the members of the public, including
potential cigarette smokers, non-smokers, cigarette smokers, including
Plaintiff herein and Defendant's aforesaid tobacco products became
available and accessible within the South Carolina Department of
Corrections' ("SCDC's) Canteen Department, at the aforesaid times, when it
where sold to Prisoners, Inmate, Convicts, Staffs, Employees, Employers,
including Plaintiff herein, when its tobacco products were supplied and
sold, and stop the sales on/or about, 2008;  § 36-2-803 et seq.;

## II. PARTIES INVOLVED
## DEFENDANT, BROWN & WILLIAMSON TOBACCO CORPORATION

7).  Defendant, Brown & Williamson Tobacco Corporation, prior to merging
with Defendant, R.J. Reynolds Tobacco Company, Inc. (Now Known As Reynolds
American, Inc.), Defendant, Brown & Williamson Tobacco Corporation, is and
were an affirmative non-residential foreign incorporated citizen in the
State of Louisville, Kentucky, did and had its' "principal place of
business" in Louisville, Kentucky, and did business throughout the forum
State of South Carolina, including in Charleston County, Charleston, South
Carolina and Richland County, Columbia, South Carolina "where" Plaintiff is
currently confined and incarcerated within the South Carolina Department of
Corrections ("SCDC"); Title 28 U.S.C.A. of Section(s) 1331, 1332, 1367;

8).  Defendant, Brown & Williamson Tobacco Corporation, prior to merging,
did knowingly took affirmative steps to manufacture, designed, caused to be
distributed directly or indirectly, transferred, transported, marketed,
promoted, advertised, supplied and sold, including but not limited to its,
Kools and Bugler (Roll-Own-Your-Own, Loose Tobacco) products, in the forum
State of South Carolina's general market places' Food/Supplies
Supermarkets, including but not limited to, Winn Dixie Stores, Piggly
Wiggly, Food Lion, Bi-los, Circle-K, 7-Eleven Convenient (Retailers')
Stores, Kroger Savon (Retailer's) Stores, and Walmart, K-Mart, "where" the

ATTACHED SHEET, CONTINUED PAGE FOUR (4)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PARTIES INVOLVED, II.

aforesaid Defendant's tobacco products were found and became available and
accessible to the members of the public, including to potential cigarette
smoker, non-cigarette smokers, cigarette smokers, including Plaintiff
herein and became available and accessible within the South Carolina
Department of Corrections' (SCDC's) Canteens Departments, at the aforesaid
times, supplied and sold to the prisoner, inmates, convicts, employees,
employers and staffs, including Plaintiff herein, and stop its' sales in
2008; § 36-2-803 et seq.; Article 3, Section 2, Clause 1;

## II. PARTIES INVOLVED
### DEFENDANT, LORILLARD TOBACCO COMPANY

9). Defendant, Lorillard Tobacco Company, prior to merging with Defendant,
R.J. Reynolds Tobacco Company, Inc. (Now Known As Reynolds American, Inc.),
Defendant, Lorillard Tobacco Company, is and were an affirmative
non-residential foreign Tobacco Industry incorporated citizen, in the State
of Delaware and a incorporated citizen in the United States of America; did
and had its' "principal place of business" in the State of New York, New
York; and did business throughout the forum State of South Carolina,
including Charleston County, Charleston, South Carolina, Richland County,
Columbia, South Carolina "where" Plaintiff is currently confined and
incarcerated within the South Carolina Department of Corrections ("SCDC");
Title 28 U.S.C.A. of Section(s) 1331, 1332, 1367;

10). Defendant, Lorillard Tobacco Company, prior to merging, did knowingly
took affirmative steps to manufacture, designed, caused to be distributed
directly or indirectly, transported, transferred, marketed, promoted,
advertised, supplied, and sold its tobacco products including but not
limited to its Newport menthol filtered cigarette brands, in the forum
State of South Carolina's general market places, in the stream of commerce,
including but not limited to, Piggly Wiggly, Winn Dixie Stores, Food Lion,
Bi-los, Circle-K, 7-Eleven Convenient (Retailers') Stores, Kroger Savon
(Retailers') Stores, and Walmart, K-Mart, "where" the aforesaid
Defendant's tobacco products were found, identified and became available
and accessible to the members of the public, including to potential
cigarette smokers, non-smokers, cigarette smokers, including Plaintiff

ATTACHED SHEET, CONTINUED PAGE FIVE (5)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, # 141070
STATEMENT OF CLAIM, IV.
PARTIES INVOLVED, II.

herein and it became available and accessibly within the South Carolina
Department of Corrections's (SCDC) Canteen Department, at the aforesaid
times, supplied and sold to prisioners, inmates, convicts, employees,
employers, staffs, including Plaintiff herein and stop its' supplies and
sales in 2008; § 36-2-803 et seq.; Article 3, Section 2, Clause 1;

## II. PARTIES INVOLVED
### DEFENDANT, PHILLIP MORRIS USA, INC.
### (F/K/A ALTRIA GROUP, INC.)

11). Defendant, Phillip Morris USA, Inc. (F/k/a Altria Group, Inc.), is
an affirmative incorporated , non-residential foreign Tobacco Industry
citizen, in the State of Virginia, and a affirmative incorporated citizen
in the United States of America, and have its' "principal place of
business" at 6601 West Broad Street, Richmond, Virginia 23230; had and
continued doing its' business throughout the forum State of South Carolina,
including Charleston County, Charleston, South Carolina, Richland County,
Columbia, South Carolina "where" Plaintiff is currently confined and
incarcerated within the South Carolina Department of Corrections' (SCDC);
Title 28 U.S.C.A. Section(s) 1331, 1332, 1367, hereof;

12). Defendant, Phillip Morris USA, Inc. (F/k/a Altria Group, Inc.), did
knowingly took affirmative steps to manufacture, designed, caused to be
distributed directly or indirectly, transported, transferred, marketed,
promoted, advertised, supplied and sold its tobacco products, including but
not limited to its Marlboro Regulars (Red & White Packs) cigarette brands,
in the forum State of South Carolina's stream of commerce, market places,
including but not limited to, Piggly Wiggly, Winn Dixie Stores, Food Lion,
Bi-los, Circle-K, 7-Eleven Convenient Stores, Krogers Savon (Retailers')
Stores, Walmart, K-Mart Shopping Centers, "where" the aforesaid Defendant's
tobacco products were affirmative identified, found and became available
and accessible to members of the public, including potential cigarette
smokers, non-smokers, cigarette smokers, including Plaintiff herein and
became available and accessible to and within the South Carolina Department
of Corrections ("SCDC's") Canteen Department, at the aforesaid times,
supplied and sold to prisioners, inmates, convicts, employees, employers,
staffs including Plaintiff herein and stopped its' supplies and sales in

ATTACHED SHEET, CONTINUED PAGE SIX (6)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, # 141070
STATEMENT OF CLAIM, IV.
PARTIES INVOLVED, II.
SPECIFIC & GENERAL PERSONAL JURISDICTION, III.

2008; § 36-2-803 et seq.; Article 3, Section 2, Clause 1:

13). Plaintiff and the aforesaid Defendants of the major Tobacco Industry
Corporations are citizens of a different or foreign States, and Plaintiff
avers that the amount of damages sought in controversy herein, "exceed the
sum of value of $ 75,000.00 (Seventy Five Thousand) dollars," exclusive of
interest of Court costs, filing fees and other costs and expenses hereof;
Title 28 1331, 1332, 1367, hereof;

## III. SPECIFIC AND GENERAL PERSONAL JURISDICTION

14). That prior to the Defendants, of the major Tobacco Industry
Corporations, as pled, identified in Paragraph(s) 5 thru 13, herein tobacco
products that, Plaintiff purchased and smoked, as pled, identified in
Paragraph(s) 3 and 4, hereof, that were affirmative caused to be
distributed, transported and transferred to the forum State of South
Carolina's general market places, directly and indirectly by the aforesaid
Defendants, the aforesaid Defendants including R.J. Reynolds Tobacco
Company, Inc., Brown & Williamson Tobacco Corporation, Lorillard Tobacco
Company and Phillip Morris USA, Inc., that their tobacco products did
"contained" deleterious carcinogenic constituents, compound chemical
substances, that the aforesaid Defendants aforeseeably knew were
affirmative were hazardous to the American members of the public, including
Plaintiff herein, health, safety, life and welfare, identified including
but not limited to:

15). Ammonia compound substances, benzo(a)pyene, arsenic, hydrogen cyanide,
lead, nickel, phenol, accetaldehyde, formaldehyde, Y-1 nitrosamines,
benzene, chromium, vinyl chloride, polycyclic aromatic hydrocarbons (PAHs),
acrylonitrile and more than over 599, more hazardous compound substances
without any warnings or notices and led the American members of the public,
including Plaintiff herein, that there were not any hazardous compounds
substances found in their tobacco products; and these aforesaid deleterious
carcinogenic constituents did affirmative "rendered" the Defendants'
tobacco products "defective and in an unreasonably danagerous condition to

ATTACHED SHEET, CONTINUED PAGE SEVEN (7)

PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, III.

an "extent beyond" that which would be "contemplated" to an ordinary user
or consumer's consumption or use, not reasonably fit suitably safe for its'
consumers' use or consumption; § 15-3-530 (4) et seq.;

16). That the aforesaid Defendants of the major Tobacco Industry
Corporations' aforesaid tobacco products, affirmative were "essentially" in
the same defective and unreasonably dangerous condition," when the
Defendants' tobacco products "left the hands of the aforesaid Defendants,
as pled, and identified in Paragraph(s) 3 thru 13, hereof, and "without and
substantial change" when Defendants' tobacco products did affirmative
"reached" the forum State of South Carolina's general market places,
supplied and sold to the members of the public, including Plaintiff herein;
§ 15-3-530 (4), et seq., § 36-2-803 et seq.;

17). That at the time, the aforesaid Defendants supplied and sold their
tobacco products, that the aforesaid Defendants "did not conformed to their
affirmative representations, what the Defendants' did knowingly took
affirmative steps to publicly advertised and stated to the American members
of the public, including Plaintiff herein; § 15-3-530 (1),(4);

18). That the aforesaid Defendants of the major Tobacco Industry
Corporations foreseeably knew that, their scientists as early as the 1950's
did took affirmative steps and measures to "warn and avoid" spraying the
aforesaid deleterious carcinogenic constituents on their tobacco products,
as a natural and probable consequence, these deleterious carcinogenic
constituents affirmative causes lung cancer and other related diseases,
including but not limited to: "Chronic obstructive pulmonary disease
(COPD), emphyseman, bronchitis, squamous carcinoma cancer, bronchogenic
carcinoma disease, coronary heart disease, colon/rectum cancer,diabetes,
chronic coughing, wheezing, high-blood pressure, hypertension, asthma,
allergies, birth defects, erectile dyfunction, myeloid leukemia, kidney
disease, kidney cancer, pancrea cancer, bladder cancer, cervix cancer,
esohagus cancer, larynx, pharynx cancer, throat irritation, throat
scratching, watery eyes of burning sensation, strokes, mouth cancer,
periodontal tooth loss, stomach cancer, miscarriage, stillbirth, babies
with cleft lips, , palate, low birth weight infants, deformities, takes
longer for wounds to heal, increase gum disease, blindness, blurry

ATTACHED SHEET, CONTINUED PAGE EIGHT (8)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, III.

vision, cataracts in the pupils, bone density, rheumatoid arthritis, increase of petic ulcers, frequency of headaches, worsen cold, flues and allergies;

19). That, even in light of the knowledge of these facts, information and evidence of the foreseeable risk of dangers, the Defendants of the major Tobacco Industry Corporations, as pled, identified and named in Paragraph(s) 3 thru 13, hereof, knowingly took affirmative steps to recklessly to avoid it scientific and medical facts and evidence and continued to disinform medical information and misinform the American members of the public, including Plaintiff herein;

IV. "DEFENDANTS PUBLISHED, ADVERTISED AND MADE AFFIRMATIVE STATEMENT TO THE AMERICAN MEMBERS OF THE PUBLIC"

20). Based upon discovery, information and belief, on/or about, April 08, 2022, Plaintiff reasonably discovered through the American Cancer Society, Inc.'s Senior News Editors, Terry Martin, Stacy Simon, reviewed through Sanja Jelic, M.D., and through the CBS, NBC, ABC, Fox TV News Broadcasting Network Inc.'s Reporters, Dean Reynolds, that on/or about, April 27, 1950, Bradford Hill, Sir Richard Doll, Ernest L. Wynder, at the Washington University, conducted laboratory research regarding the carcinogenicity blended in cigarette products, advertised in the "American Medical Association's Journals (AMAJ), on/or about, May 27, 1950, by conducting laboratory mices and rats experiments, shaving the dermal skin backs of the mices and rats, and painted their shaved backs with "black-tar" obtained from tobacco smoke condensate, and after approximately 6 months to 1 (One), year, the laboratory mices and rats developed tumorgenic cancer or squamous carcinoma cancer;

21). That the aforesaid Scientists, Hill, Doll and Wynder, shared their laboratory findings with the aforesaid Defendants of the major Tobacco Industry Corporations, and on/or about, December 14, 1953, the aforesaid Defendants covered-up the scientists' findings that smoking cigarettes causes lung cancer and other related diseases and met with other Tobacco Industries, colleagues, including their outside lawyers, John Hill and Knowlton, to act with specific intent to conspire to jointly engaged in a

ATTACHED SHEET, CONTINUED PAGE EIGHT (8)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

scheme to commit fraud and civil conspiracy against the American members of
the public, by meeting at the Plaza Hotel, in New York City, Manhattan New
York, including but not limited to:

22). Defendants, R.J. Reynolds Tobacco Company, Inc., and its former
President, Edward A. Darr, Brown & Williamson Tobacco Corporation, its'
former President, Timothy V. Hartnett, Phillip Morris USA, Inc., and its
former President, O. Parker McComas, Lorillard Tobacco Company, and its
former President, William J. Halley, Benson & Hedge, and its' former
President, Joseph F. Cullman, Jr., and Liggett Group, Inc., and its former
President, Benjamin F. Few and the American Tobacco Company, and its'
former President, Paul M. Hahn and others;

23). That on/or about, January 04, 1954, the same Defendants met at the
Plaza Hotel, in New York City, Manhattan, New York, and jointly agreed with
mutual assented minds to organized a mission statement for a new
organization that stated its' "purposes and objectives to voluntarily
assume responsibility and duty to, "aid and assist research into tobacco
use and health, and particularly into a relationship between the use of
tobacco and lung cancer, and to make available to the American members of
the public factual information on this subject and announced in a full-page
advertisement called, "The Frank Statement To Cigarette Smokers, published
in 448 Newspapers, stated that, "cigarette smoking had not proven a cause
of lung cancer; that cigarettes were "not injurious" to health and more
research on smoking and health issues was needed;

### IV. DEFENDANT, R.J. REYNOLDS TOBACCO COMPANY, INC.

24). Based upon discovery, information and belief, on/or about, April 08,
2022, the American Cancer Society, Inc.'s Senior News Editors, Terry
Martin, Stacy Simon, and reviewed by Sanja Jelic, M.D., disclosed material
facts and information that the aforesaid Defendant fraudulent concealed,
prevented, suppressed from the American members of the public, including
Plaintiff herein, that on/or about, December 15, 1951, through the New York
Times, the New York Post, Post & Courier Newspapers, Charleston, South
Carolina, the Washington Times, the Washington Post, Reader's Digest, Jet,

ATTACHED SHEET, CONTINUED PAGE NINE (9)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

Sports Illustrated, Final Calls did affirmative expressed, and implied by stating that, "its Camel unfiltered cigarettes are wholesome, fit for consumers' use and unlikely to cause any harm or disease whatever; smoking Camels are "harmless" to the respiratory system and it contains "less nicotine" than did that of any of the four (4) other largest selling brands of cigarettes;

25). Based upon discovery, information and belief, on/or about, April 08, 2022, through the American Cancer Society, Inc.'s News Editors, Terry Martin, Stacy Simon, and reviewed by Sanja Jelic, M.D., reasonably disclosed information and facts on/or about, March 19, 1952, the aforesaid Defendant, knowingly took affirmative steps to published ads regarding its' "Winston cigarette brands, by affirmative stated that, "Smoking Winston cigarettes will have "no adverse affects on ones' health" than other leading brands;" "that smoking Einston cigarettes, "contains less ar and nicotine and are wholesome, healthier to ones' throat and has "no throat irritations" and fit for ones' use and are "harmless to the respiratory organs and "taste good like a cigarette should taste; and that it's Salem cigarette are safe suitably fit for ones' health and has "less tar and nicotine" and are "harmless and healthier for ones' respiratory organs;"

26). That on/or about, January 10, 1972, Defendant, R.J. Reynolds Tobacco Company, Inc., did knowingly took affirmative steps to published and advertised in the Newsweek, Sports Illustrate, Jets magazine(s) that, "its' Doral cigarettes are the low tar and nicotine cigarette, the filter system you'd need a scientist to explain, but Doral says it in two (2) words: "taste me;"

27). That, on/or about, June 10, 1975, the aforesaid Defendant, took affirmative steps that stated in the "Sports Illustrated magazine that, " Smoking low tar cigarettes to a Doral diet;" " How I lost 700 milligrams of tar the first week without losing out on taste." "I'm not too big in the willpower department, but I lost 700 milligrams of tar the first week on what I call the "Doral Diet;" "Now I can continue to enjoy smoking Doral cigarettes;"

28). That on/or about, June 24, 1975, the aforesaid Defendant took affirmative steps to advertised in the Sports Illustrate, Readers' Digest, Newsweek magazines, the New York Times, the New York Post newspapers news

ATTACHED SHEET, CONTINUED PAGE TEN (10)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

outlets by affirmative stating that, "it is safer to smoke Doral cigarettes than other leading brands of cigarettes and you should switch to "Dorals" and save your health;" "that Dorals is a good cigarette to try if you've worried about the amount of "tar and nicotine" your lungs are absorbing;" "if you want to save your health, and still want to smoke cigarettes, smoke "Doral cigarettes. Doral has less tar, but the taste did not change, and Dorals are "low in tar and nicotine and consequently, Dorals are better for you and less of a health risk;"

29). That, on/or about, March 05, thru 12, 1982, the aforesaid Defendant's former Chairman, Edward Horrigan, while acting in the course and conduct within the scope of its employment, in the "stream of commerce" of § 36-2-803 et seq., the CBS TV News Broadcasting Network Inc.'s Reporter, Mike Wallace, had an national interview with Defendant's former Chairman & Chief Executive Officer (CEO), Horrigan, at the Congressional Subcommittee Hearing before a former Chairman, Henry A. Waxman, at 2415 Rayburn House Office Building, in Washington, D.C. (District of Columbia), and the CBS News Reporter, Wallace, asked Edward Horrigan, under sworn oath, "whether its cigarettes were addictive?" and "whether its cigarettes causes any disease?" and Horrigan affirmative stated, "that there is absolutely no proof that cigarettes are addictive, and that, cigarette smoke does not cause any lung cancer or any disease;"

30). That on/or about, April 14, 1994, Defendant's former Chairman & Chief Executive Officer (CEO), James W. Johnston, while acting in the course and conduct within the scope of its' employment, in the stream of commerce of § 36-2-803 et seq., that Johnston did knowingly took affirmative steps to appear in a national televised Congressional Subcommittee hearing, before the former Chairman, Henry A. Waxman, at 2415 Rayburn House Office Building, in Washington, D.C., and the CBS TV News Broadcasting Network Inc.'s News Reporter, Robert (Bob) Schieffer and Ronald (Ron) Wyden, asked Defendant's Former Chairman & CEO, James W. Johnston, under the penalty of perjury, "Whether it added or otherwise "manipulate nicotine to addict smokers?" and Defendant's (former) CEO, Johnston affirmative stated that,

ATTACHED SHEET, CONTINUED PAGE ELEVEN (11)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

"We do not do anything to "hook" smokers or to keep them hooked;" that "R.J. Reynolds did "not" design our cigarettes with any nicotine levels in specification;

31). That, on/or about, May 16, 2004, based upon discovery, information and belief, through the Newsweek, Sports Illustrated, Jet, Time & Life, Ebony, Playboy, Pennhouse magazines, Defendant, R.J. Reynolds Tobacco Company, Inc., did knowingly took affirmative steps, and issued a statement through its "website" that, "R.J. Reynolds does "not" add nicotine or any nicotinic compounds to any of our cigarettes, nor do we do anything to enhance the effects of nicotine on the smokers;"

32). That the pro'se Plaintiff, did acted in good faith, what the aforesaid Defendant affirmative represented in its advertisements and statements in Paragraph(s) 20 thru 31, hereof and Plaintiff acted reasonably detrimentally reliance upon Defendant, R.J. Reynolds Tobacco Company, Inc.'s Paragraph(s) advertisements and statements and became physically, psychologically, and emotionally dependency or addictive, hereof;

### IV. DEFENDANT, BROWN & WILLIAMSON TOBACCO CORPORATION

33). That, on/or about, September 23, 1974, Defendant, Brown & Williamson Tobacco Corporation's (former) Advertising & Marketing Planning Director, Richard L. Johnson, while acting during the course and conduct within the scope of its' employment, in the stream of commerce, took affirmative steps by stating that, "Although B & W's share of smokers under 25 (Twenty Five) years old, was greater than the rest of the industry, this was due entirely to its' Kool brands of cigarettes; and without Kools' influence, the Company's profile is female, old and getting older, a relatively undesirable situation;"

34). That on/or about, October 05, 1975, Defendant's former Marketing Director, Richard L. Johnson, did knowingly took affirmative steps and advertised through Newsweek, Ebony, Hot Rod, Sports Illustrated, Jets, Reader's Digest, and Post Guide magazines that, "Kool cigarette brands has a young age profile; the largest proportion of Kools' smokers are between 16 and 25 years of age and that Kools' young age profile contracts with the

ATTACHED SHEET, CONTINUED PAGE TWELVE (12)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

older age profile of the other major menthol brand-Salem and is more
similar to that of Marlboro; and that starters made up 15% of smokers age
16 to 25 and that "kool cigarette brands" "attracts" a high level of
starting smoking, "especially 16-25 years old starters;"

35). That, on/or about, 1972, the aforesaid Defendant, took affirmative
steps by publicly advertised that stated, "its Buglers' (Roll-Own-Your-Own,
Loose Can Container) tobacco products is mild with good flavor and have "no
adverse" effects on ones' nose, throat and does "not" have any "additives,"
and safe and harmless against any disease and less harmful on ones'
sensatory organs;"

36). That on/or about, April 14, 1994, Defendant's former President, Thomas
E. Sandefur, while acting in the course and conduct within the scope of
its' employment, in the stream of commerce, and that it did knowingly took
affirmative steps, to appear and initiate an national interview with the
CBS TV News Broadcasting Network Inc.'s Reporter, Robert (Bob) Schieffer,
at 2415 Rayburn House Office Building, in Washington, D.C. (District of
Columbia), and before a Congressional (former) Chairman, Henry A. Waxman's
Subcommittee hearing on issues of health, energy, commerce and environment;
and during the hearing, the CBS TV News Reporter, Schieffer and Ronald
(Ron) Wyden asked, (former) President, Sandefur, "whether its cigarettes
are addictive?    Sandefur affirmative stated that, "Nicotine is not
addictive and Brown & Williamson does "nothing in the manufacture of its'
tobacco products that "increases the level of nicotine "above" that which
is "naturally found in the tobacco plant, "nor does it artificially increase
nicotine;"

37). That on/or about, January 02, 1996, Defendant, Brown & Williamson
Tobacco Corporation, R.J. Reynolds Tobacco Company, Inc., Phillip Morris
USA, Inc., Lorillard Tobacco Company, through the Tobacco Institute, Inc.,
did knowingly took affirmative steps to file a joint submission report,
which opposed the U.S. Food & Drug Administration (FDA's) report, that
affirmative stated, "that under its scientifically verifiable criteria,
"nicotine and cigarette smoking are "not" addictive to smokers;"

38). That on/or about, May 10, 2004, Defendant, Brown & Williamson Tobacco
Corporation, issued an advertisement in the Sports Illustrated, Ebony,

ATTACHED SHEET, CONTINUED PAGE THIRTEEN (13)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

Reader's Digest, People's, Playboy, ESPN, Vogue, PentHouse, Vibe
magazine(s), and the New York Times, the New York Posts, the Washington
Times, the Washington Post, the Charleston's Post & Courier Newspaper News
Outlet, that affirmative represented by stating that, "Kool brands
recognized DJ as the center of "Hip Hop," inspired by the real feel and
energy of the streets....DJ's are the masters of the Hip Hop like, "Kool
brands of cigarettes" is the master of menthol; " Kool Mixx special edition
packs are our mark of respect for these "Hip Hop players;"

39). That Plaintiff, as an observer, reader, listener or heard, Plaintiff
did acted in good faith, as to what I had read, observed on national
televised, outdoor billboards, coupons, posters, TV commercial
advertisements, aforesaid magazines, newspapers that Plaintiff acted
reasonably detriementally reliance upon these aforesaid Paragraph(s)
statements of the Defendant, Brown & Williamson Tobacco Corporation and
continued to purchase and smoke Defendant's Kools and Buglers tobacco
products and became dependency upon them;

## IV. DEFENDANT, LORILLARD TOBACCO COMPANY

40). That, on/or about, June 09, 1978, Defendant, Lorillard Tobacco
Company, did knowingly took affirmative steps to issue public statements
to advertised its' Newport cigarette brands, that stated, "Newport
cigarette was definitely a starter brand and its' Newport cigarettes is
identified as an entry brand and further stated that, "black Newport and
"Kool smokers are even younger than the switching data would indicate;"

41). That on/or about, August 30, 1978, the aforesaid Defendant's former
Director of Sales, Teddy Achey, did knowingly took affirmative steps to
make a public advertising statement to convey and induce the American
members of the public, including Plaintiff, by affirmative stated that,
"The success of Newport brands has been fantastic during the past few
years. (further), "Our profile taken locally shows that our "Newport brands
of cigarettes purchased by black people (of all ages), young adults,
especially high schoolstudents. (further) "Newports cigarette brands in the
1970's is turning into the "Marlboro" of the 60's and 70's, and I think the
time is right to develop a "Newport Natural (Non-Menthol) cigarette to

ATTACHED SHEET, CONTINUED PAGE FOURTEEN (14)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

attract the young adult consumers" desiring a non-menthol product;"

42).    That, on/or about, April 14, 1994, Defendant, Lorillard Tobacco
Company's former Chairman Andrew H. Tisch and former Vice Chairman,
Alexander Spear, while acting during the course and conduct within their
employment, in the stream of commerce, did knowingly took affirmative
steps, during an national interview, with the CBS TV News Broadcasting
Network Inc.'s Reporter, Robert (Bob) Schieffer, and former Congressional
Chairman, Henry A. Waxman, at the 2415 Rayburn House Office Building, in
Washington, D.C. (District of Columbia), and Ronald (Ron) Wyden, met on a
national subcommittee hearing on issues related to health, energy, commerce
and environment;

43). During the aforesaid hearing, both Robert Schieffer and Wyden asked
Defendant's Chairman(s) Tisch and Spear, "do they believe that nicotine is
addictive? and both Tisch and Spear affirmative stated that, "they believe
that nicotine is not addictive; and further stated that, "Cigarette Maker
could adjust the level of nicotine in their products by blending different
types of tobaccos to create a blend with a higher concentration; and both
Andrew H. Tisch and Alexander Spear, affirmative denied, that "it
manipulates the amount of nicotine contained in its cigarettes;"

44). That on/or about, January 02, 1996, Defendants, Lorillard Tobacco
Company, Phillip Morris USA, Inc., R.J. Reynolds Tobacco Company, Inc.,
Brown & Williamson Tobacco Company, through the Tobacco Institute, Inc.,
did knowingly took affirmative steps to jointly engaged in filing a
submission report that affirmatively "opposed" the U.S. Food & Drug
Administration (FDA's) report that affirmative stated that, "under its'
scientifically verifiable criteria, "nicotine and cigarette smoking are
"not addictive to smokers;"

45). That, on/or about, May 10, 2004, Defendant, Lorillard Tobacco
Company's former Chief Executive Officer (CEO), Martin Orlowsky, did
knowingly took affirmative steps to continued "deny" that smoking
cigarettes causes any diseases and emphysema, COPD and heart disease and
    further stated that, "we do not know and if in fact the evidence,
the scientific evidence is such that it warrants, and saying it does cause,
we have been in a longstanding position, and we don't know;"

ATTACHED SHEET, CONTINUED PAGE FIFTEEN (15)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

46). That Plaintiff did affirmative read about, these facts in the Sports Illustrated, Jets, Ebony, Playboy, PentHouse, outdoors billboards, Post Guide, the Washington Post, the Washington Times, the New York Times, the New York Post and Plaintiff acted in good-faith, as what the Defendant affirmative represented were truth and accurate and acted reasonably detrimentally reliance upon Defendant's statements in Paragraph(s) 40 thru 45, hereof, and Plaintiff continued to purchase and smoke Defendant's tobacco products and became physically, psychologically, emotionally addictive;

## IV. DEFENDANT, PHILLIP MORRIS INC.

47). Based upon discovery, information and belief, on/or about, April 08, 2022, through the American Cancer Society, Inc.'s Senior News Editors, Terry Martin, Stacy Simon, and reviewed by Sanja Jelic, M.D., disclosed information and facts that, the aforesaid Defendant concealed, suppressed, omitted, prevented from the American members of the public, cigarette smokers, non-smokers, potential smokers, and Plaintiff herein, that on/or about, January 16, 1950, Defendant, Phillip Morris USA, Inc., did knowingly took affirmaive steps to publish and affirmative advertised its Marlboro Regular non-filtered cigarette brands, by employing the image of the Marlboro Man, "a rugged cowboy otfen seen riding on horseback, with a Marlboro cigarette in his mouth smoking, promoting and advertising its' Marlboro cigarette brands on national televised commercials, affirmative stating that, "Nobody can smoke a better cigarette than Marlboro and further stated that, "Marlboro cigarettes are wholesome, fit safe for ones' use, against throat irritations;"

48). That, on/or about, March 10, 1951, Defendant, Phillip Morris USA, Inc., as paid sponsor, sponsored radio and televised commercials and shows, advertising and promoting its Marlboro cigarette brands, including but not limited to, "The I Love Lucy TV Series, entertainment shows, affirmative stated that, "Smoking Marlboro cigarettes is good for your health; Defendant, also sponsored the Arthur Godfrey televised entertainment show, affirmative advertised and ppromoted that, "Smoking cigarettes, even Marlboro cigarettes were non-addictive and not injurious to ones' health;"

ATTACHED SHEET, CONTINUED PAGE SIXTEEN (16)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENRAL PERSONAL JURISDICTION, IV.

49). That, on/or about, December 12, 1984, Defendant, Phillip Morris USA, Inc. did knowingly took affirmative steps to issue, publish and advertised through Newsweek, Reader's Digest, Post Guide, Jets, Sports Illustrated, Ebony, Vibes, PlayHouse, PentHouse and other magazines and the Washington Post, the Washington Times, the New York Post, the New York Times, the Charleston Post & Courier Newspapers News Outlets and other major and local Newspapers that affirmative stated that, "its' Marlboro's growth and presumably, its position as the main brand of choice among new smokers, "co-incided" with the "Marlboro Country Campaign" and one that probably did appeal to young people, but not one that marketers would have been likely one have composed to "attract young people;"

50). That, on/or about, August 10, 1987, Defendant, Phillip Morris USA, Inc., did knowingly took affirmative steps to publicly advertised statements in local, major and national interstate circulations of Newspaper News outlets and magazines, including but not limited to, the Washington Post, the Washington Times, the New York Times, the New York Times, the Charleston's Post & Couriers, Newspapers, and the Reader's Digest, Sports Illustrated, Jets, Ebony, Newsweek, Vibes, Playboy, PentHouse, People's, Hot Rod magazines, that affirmative represented by stating that, (had pictures of smokers talking to the readers saying), "Please don't tell me my cigarette smoke is harmful to you;" There's just "No convincing proof" that it is;" and I know there's no proof my smoke can hurt you!"

51). That, on/or about, April 14, 1994, Defendant's former President & Chief Executive Officer (CEO), William I. Campbell, did knowingly took affirmative steps, while acting during the course and conduct within the scope of it's employment, in the stream of commerce, during an national interview with the CBS TV News Broadcasting Network Inc.'s Reporter, Robert (Bob) Schieffer and a former Senator, Ronald (Ron) Wyden, before a Waxman's Subcommittee Hearing (former Congressional Chairman, Henry A. Waxman), on issue of health, energy, commerce and environment, sworn under oath pursuant to the penaly of perjury, before a live televised audience; at 2415 Rayburn House Office Building, in Washinton, D.C. (District of Columbia);

ATTACHED SHEET, CONTINUED PAGE SEVENTEEN (17)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

52). During the subcommittee hearing, the CBS TV News Reporter, Robert
(Bob) Schieffer and Ronald Wyden, asked Defendant's former President & CEO,
Campbell, whether smoking cigarette is addictive? and whether it
"manipulated its nicotine level in its' cigarettes to addict smokers? CEO
Campbell took affirmative steps to denied, that smoking cigarettes is
addictive, and further stated that, "P.M., does not manipulate nicotine
levels in their cigarettes to addict smokers, and the methods of quality
control do  not constitute manipulation;

53). That, on/or about, June 23, 1994, Defendant, Phillip Morris USA, Inc.,
did knowingly took affirmative steps to publicly issue a press release
report, that affirmative stated that, "there is no indication that ammonia
compounds in our cigarettes "alters" the amount of nicotine the smoker
inhales and the presence of ammonia compounds in cigarettes "does not
supports," Dr. David Kessler's allegations that Cigarette Companies
"manipulates nicotine levels" to addict their customers;"

54). That, on/or about, October 18, 1995, Defendant, Phillip Morris USA,
Inc., did knowingly took affirmative steps to issue and published its'
 "press-release report," through Newsweek, Ebony, Reader's Digest, Jets,
Sports Illustrated, Post Guide, the New York Post, the New York Times, the
New York Post, the Charleston's Post & Courier, the State's Newspapers,
that affirmative represented by stating that, "P.M., USA, "does not" use
ammonia in the cigarette manufacturing process to increase the amount of
nicotine inhaled by the smoker to affect the rate of absorption of nicotine
in the bloodstream of the smoker or to increase the potency of the nicotine
a smoker actually inhales;"

55). That on/or about, January 02, 1996, Defendants, Phillip Morris USA,
Inc., R.J. Reynolds Tobacco Company, Inc., Brown & Williamson Tobacco
Corporation, Lorillard Tobacco Company, through the Tobacco Institute,
Inc., did knowingly took affirmative steps to jointly issued a written
submission, opposing the U.S. Food & Drug Administration's (FDA's)
statement report, and in the aforesaid Defendants' opposed submission, it
affirmative stated that, "under its scientifically verifiable criteria,
that nicotine and cigarette smoking "are not addictive;"

ATTACHED SHEET, CONTINUED, PAGE EIGHTEEN (18)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

56). That, on/or about, May 12, 2002, Defendant, Phillip Morris USA, Inc.'s Vice President of Marketing & Sales, Michael Mahan, did knowingly took affirmative steps to make and published statements, regarding its Marlboro Brands, that stated, "its' Marlboro brands' prime target is to attract young adult smokers;"

57). Plaintiff asserts, that he acted in good-faith, upon what the aforesaid Defendant, affirmative represented to him (Plaintiff) were "truthfully and accurately" and took further steps and acted reasonably detrimentally reliance upon the Defendants' aforesaid statements and advertisements, pled, set forth in Paragraph(s) 47 thru 56, hereof, and continued to purchase, smoke and became physically, psychologically and emotionally addictive or dependency upon Defendant's tobacco products;

IV. DEFENDANT(S)' ADVERTISEMENTS AND STATEMENTS THAT DEFENDANTS' REPRESENTED WERE PURPOSEFULLY DIRECTED TOWARDS THE MEMBERS OF THE PUBLIC OF THE FORUM STATE OF SOUTH CAROLINA'S CONSUMERS, POTENTIAL CIGARETTE SMOKERS, CIGARETTE SMOKERS, NON-SMOKERS AND CIGARETTE SMOKER"

58). Defendant(s) of the major Tobacco Industry Corporations' as pled, identified in Paragraph(s) 20 thru 56, hereof and Defendants' affirmative advertisements and statements as pled, identified in Paragraph(s) 20 thru 56, herein demonstrated as a reasonable inference, that the aforesaid Defendants' herein affirmative "had and continue to have a systematic minimum/sufficient business related "contact activities" within the forum State of South Carolina, pursuant to § 36-2-803 et seq., § 39-1-20 et seq., and § 39-65-50 et seq., that were affirmative or "purposefully directed towards" the forum State of South Carolina's members of the public, including residents, citizens, consumers, potential cigarette smokers, non-cigarette smokers, cigarette smokers, including Plaintiff herein;

59). That Plaintiff's physical, psychological, emotional, economical, non-economical addictions, injuries and damages, including but not limited to, high-blood pressure, hypertension, shortage of breath, increase phlegm, chronic coughing, throat irritation, throat scratching, asthma, wheezing, dizzness, blurry and poor vision, cased Plaintiff to have to wear eye glasses, tuberculosis (TB), and mandatory takes life-time prescribed

ATTACHED SHEET, CONTINUED, PAGE NINTEEN (19)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

medications, including but not limited to, Lisiropril 20 mg., substituted
for Zestril, ordered by Nurse Practitioner, Lilian Emetu, Amlodipine 10
mg., substituted for Norvasc ordered and prescribed by Medical Physician,
Dr. Gregory Furness and Fenorbrate 134 mg, hereof, and other serious,
permanent and irreparable damages substantially "arosed out of," in related
to," and in connection with" the aforesaid Defendants' "continuous
systematic minimum/sufficient business related "contact activities" within
the forum State of South Carolina Carolina; §§ 36-2-803 et seq., § 39-1-20
et seq.;   Article 3, Section 2, Clause 1;

60). That the aforesaid Defendants' individually and collectively did
knowingly took affirmative steps to avails themselves of the benefits,
privileges and protection of the forum State Code of Laws, 1976, of South
Carolina, that such of the "maintenance of the suit, does "not offend"
traditional notions of fair play and substantial justice of due process
clause of the United States' Constitutional provision; 14th Amendment of
the United States' Constitution;

61). Therefore, for these reasons, Plaintiff hereby, and presumes that,
this respective Court has reasonable authority and legal standing to
exercise "personal jurisdiction" over the non-residential and foreign of
the Tobacco Industry Corporations' as Defendants and the aforesaid
Defendants should reasonably anticipate being haled into the forum State of
South Carolina'

   V. <u>PLAINTIFF HAS LEGAL STANDING TO FILE SUIT AGAINST THE DEFENDANTS IN
      THE U.S. DISTRICT COURT, PURSUANT TO THE U.S. CONSTITUTION ARTICLE
      3, OF SECTION 2, CLAUSE 1"</u>

   I. FIRST (1ST), ESSENTIAL ELEMENT, OF LEGAL STANDING, 1). "PLAINTIFF
      SUFFERED AN INJURY-IN-FACT AN INVASION OF A LEGAL PROTECTED
      INTEREST, WHICH IS CONCRETE AND PARTICULARIZED, THAT IS ACTUAL OR
      IMMINENT AND NOT CONJECTURAL OR HYPOTHETICAL"

ATTACHED SHEET, CONTINUED, PAGE TWENTY (20)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON,    #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

62). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 01 and 02; and Paragraph(s) 03 thru 61, hereof, that demonstrates as a reasonable inference that, under the South Carolina Code of Laws, 1976, Statutory provisions of the Civil Remedies & Procedure Act of § 15-3-530 (4),(5)(7) et seq., and under the South Carolina Unfair Trade & Commercial Practice Act § 39-1-20 thru 39-5-20 et seq., conferred, created, _____ and provided Plaintiff, individually, personally, and a private right and a legal protected interest to bring before this Court to "redress and enforce" his rights and legal interest against the aforesaid Defendants' (of the major Tobacco Industry Corporations') violation of a legal interest and legal rights of Plaintiff, who has affirmative suffered and sustained an "injury in fact," which is "concrete and particularized, which affected Plaintiff individually and personally, that is actual and imminent, that affirmative threatens Plaintiff's health, safety, life and welfare, that is not conjectural or hypothetical;

63). That the "essential purpose of the aforesaid Statute is to "protect Plaintiff from the kind of harm or risk of potential latency risk of dangers that Plaintiff has suffered and sustained; Plaintiff is a member of the public, of a class of persons the Statute intend to protect and designed to prevent Plaintiff from "exposure of the latency carcinogenic constituents or hazardous compound substances, in Defendants' tobacco products, as pled, identified, set forth in Paragraph(s) 14 thru 19, hereof, that has caused and threatens Plaintiff's past, present and future health, safety, life and welfare, putting Plaintiff's health, safety, life and welfare in a substantial and natural dangerous condition that is not conjectural and hypothetically, that recklessly denied, deprived, Plaintiff's right, and legal protected interest of his health, safety, life and welfare, putting it in jeopardy;

64). Including but not limited to, physically, psychologically and emotionally addiction, chronic coughing, high-blood pressure, hypotension, asthma, shortage of breath, increase phlegm, periodontal tooth loss, and causing Plaintiff to take life time prescribed medications, including but

ATTACHED SHEET, CONTINUED PAGE TWENTY ONE (21)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
SPECIFIC & GENERAL PERSONAL JURISDICTION, IV.

not limited to, Lisiopril 20 mg., Amlodipine 10 mg., and Fenorbrate 134 mg., Aspirin 325 mg., hereof;

IV.   THE SECOND (2ND), ESSENTIAL ELEMENT OF LEGAL STANDING, 2). "A CAUSAL CONNECTION BETWEEN THE INJURY IN FACT AND THE DEFENDANTS' CONDUCT COMPLAINED OF AND THE INJURY HAS TO BE "FAIRLY-TRACEABLE" TO THE DEFENDANT(S)"

65).   Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations of a "causal connection between Plaintiff's injury in fact and Defendants' conduct complained of as pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 01 thru 64, hereof, to demonstrates as a reasonable inference, that Plaintiff's injury in fact and injuries has to be "fairly-traceable" to Defendants of the major Tobacco Industry Corporations, as pled, identified in Paragraph(s) 05 thru 13, hereof;

IV.   THE THIRD (3RD), ESSENTIAL ELEMENT OF LEGAL STANDING, 3). "THAT IT MUST BE LIKELY AS OPPOSED TO MERELY SPECULATIVE THAT PLAINTIFF'S INJURIES WILL BE "REDRESSED" BY A FAVORABLE JUDGMENT OR DECISION"

66). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 01 thru 64, hereof, that as opposed to merely speculative, that Plaintiff's injuries will be "redressed" by a favorable judgment or decision, hereof;

V.   PLAINTIFF REQUEST THE COURT TO "INVOKE" THE EQUITABLE ESTOPPEL DOCTRINE AGAINST, THE DEFENDANTS' PRESUMABLY AFFIRMATIVE DEFENSE OF STATUTORY OF LIMITATIONS PERIOD OF PLAINTIFF'S CLAIMS"

I. THE FIRST (1ST), ESSENTIAL ELEMENT OF EQUITABLE ESTOPPEL, 1). "CONDUCT BY PARTY "ESTOPPED" WHICH AMOUNTS TO A FALSE REPRESENTATION OR A CONCEALMENT OF A MATERIAL FACT"

67).   Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations of Defendants' conduct, which amounts to a false

ATTACHED SHEET, CONTINUED PAGE TWENTY TWO (22)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PLAINTIFF'S REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

representation or a concealment of a material fact, pled, identified, set
forth, as if fully stated verbatim in Paragraph(s) 14 thru 61, hereof;

V.  THE SECOND (2ND), ESSENTIAL ELEMENT OF EQUITABLE ESTOPPEL, 2). "THAT
        DEFENDANTS' INTENTION THAT THEIR CONDUCT SHALL BE ACTED UPON BY THE
                                OTHER PARTY"

68).  Plaintiff hereby, adopts and incorporates by reference, each and
every factual allegations, as pled, identified, set forth as if fully
stated verbatim in Paragraph(s) 14 thru 64, hereof, to demonstrates as a
reasonable inference, that Defendants' intention that their conduct shall
be acted upon by the American members of the public, including Plaintiff
herein that affirmative establish Defendants' condition of the state of
their minds, individually and collectively, acting with specific intent to
deceive and induce/influence Plaintiff's decision/choice to defraud
Plaintiff into purchasing and smoking Defendants' tobacco products, to
increase their tobacco products' sales and to maximize their commercial and
corporates' profits, hereof;

V.   THE THIRD (3RD), ESSENTIAL ELEMENT OF EQUITABLE ESTOPPEL, 3). "THE
        DEFENDANTS' KNOWLEDGE, ACTUAL OR CONSTRUCTIVE, OF THE TRUE FACT(S)"

69).  Plaintiff hereby, adopts and incorporates by reference, each and
every factual allegations, as pled, identified, set forth as if fully
stated verbatim in Paragraph(s) 01 thru 64, hereof, including but not
limited to:

                    DEFENDANT, R.J. REYNOLDS TOBACCO COMPANY, INC.

70).  Based upon discovery, information and belief, on/or about, April 08,

2022, The American Cancer Society, Inc.'s Senior News Editors disclosed
material facts of the Defendant, R.J. Reynolds Tobacco Company, Inc.'s
actual or constructive knowledge, that Defendant, affirmative kepted
concealed and prevented the American members of the public, including
Plaintiff herein from knowing, that on/or about, February 12, 1953,
Defendant's former Chief Scientist & Director, Claude Edward Teague, did
affirmative conducts an laboratory experiment with mices, by shaving the

skin backs of mices and painted their backs with black-like tar obtained
from tobacco condensate; during Dr. Teague's experiments he discovered and
identified poisionous chemicals identified as benzo(a)pyrene and arsenic
and other hazardous compund substances in the "tobacco smoke condensate,"
which were collected from the human's lungs and after more than 6 (six)
months to one (1) year, after the application, those laboratory mices, only
1 (One) mice survived, the other mices affirmative developed "malignant
tumors  or  squamous  cell  cancer;  and  as  result,  Dr.  Teague  inform
(Defendants)  R.J.  Reynolds  (Tobacco  Company,  Inc.),  regarding  its'
laboratory findings, and (Defendant) R.J. Reynolds (Tobacco Company, Inc.),
advised Dr. Teague, not to published this information to the American
public at large, to keep it concealed and confidential;

71).  That on/or about, December 11, 12, 1969, thru January 09, 1970,
Defendant,  R.J.  Reynolds  Tobacco  Company,  Inc.,  hired  Dr.  Price,  a
Scientist & Chemist, and during its' laboratory experiments at the Mouse
House Facility Laboratory, in Winston Salem, North Carolina, a project
known as "Project 6900," it had experiments with mices, rats, monkeys,
rabbits, pigs and cats, and Dr. Price, shaved the skin backs of mices and
rats approximately 100 (One Hundred) and applied tobacco smoke condensate
to the shaved skin back s of the mices and rats, and after examining the
tobacco smoke condensate, Dr. Price identified benzo(a)pyrene and other
hazardous compound substances;

72).  After approximately 6 (six) months, 85% of the shaved skin backs of
the mices and rats developed tumorigenic cancer or squamous cell cancer;
Dr. Price stated in his report, based upon his medical findings, evidence
is clearly established, that its filtered cigarette smoke are no less
tumorigenic, than its "non-flitered cigarette smoke; and on/or about
January 09, 1970, Dr. Price's laboratory findings was discovered by
Defendant, Phillip Morris USA, Inc.'s (former) President & Chief Executive
Officer (CEO), Joseph F. Cullman, III, who issued a complaint to
(Defendant), R.J. Reynolds Tobacco Company, Inc., that affirmative stated
in pertinent part, that should this report that, smoking cigarettes is a
link of causing lung cancer, reached the American public at large, it would
pose an "massive civil litigation against the Tobacco Industry;"

ATTACHED SHEET, CONTINUED PAGE TWENTY FOUR (24)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PLAINTIFF'S REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

73). Despite, the many years of progress made in the Project 6900, just in one (1) day, without any warnings or notice, Defendant, R.J. Reynolds Tobacco Company, Inc., "abruptly," closed the entire Mouse House Laboratory Facility, in Winston Salem, North Carolina, and fired all 26 (Twenty Six) employees and staffs, and destroyed everything in it, including but not limited to its' medical and scientific record, files, reports, even killed all the laboratory animials;

## V. DEFENDANT, BROWN & WILLIAMSON TOBACCO CORPORATION

74). Based upon discovery, information and belief, on/or about, April 08, 2022, the American Cancer Society, Inc.'s Senior News Editors, Terry Martin, Stacy Simon, through Sanja Jelic, M.D., disclosed material information and facts of a long-time cover-up, concealment of the hidden latency risk of dangers, relating to smoking cigarettes, health and disease, that the aforesaid Defendant, affirmative suppressed, prevent, omitted from the American members of the public, including Plaintiff herein, and on/or about, September 21, 1992, a long-time cover-up, by Defendant, Brown & Williamson Tobacco Corporation, did knowingly took affirmative steps, while acting in the course and conduct within the scope of its employment, while in the stream of commerce, for many years "clandestinely engaged" in developing through a DNA Plant Technology Corporation, in Oakland, California;

75). Did affirmative manufactured "Y-1," tobacco high-nicotine artifically, contained more than 1 (One) million pounds, by knowingly took steps to blend it (Y-1 tobacco-nicotine artifically) with natural tobacco, and designed its Kool menthol filtered cigarette Brands and its Buglers (Roll-Own-Your-Own, Loose tobacco products), that the American members of the public, including Plaintiff, purchased and smoke, and the aforesaid Defendant, self-concealed, and kepted it secret, and instructed its' official, employed at the DNA Plant Technology Corporation, "if the U.S. Food & Drug Administration's (FDA's) Investigators comes here to inspect, tell them that, "Y-1," had never been commercialized and manufactured here, at this Plant;"

ATTACHED SHEET, CONTINUED PAGE TWENTY FIVE (25)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PLAINTIFF'S REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

75). That on/or about, May 03, 1994, the U.S. Food & Drug Administration sent 4 (four), Investigators at the DNA Plant Technology, and conducted an inspection and found 2 (Two), United States' Customs Service Invoice Sheets, that indicated facts, that more than 1 (One) million pounds of "Y-1, artificial tobacco-nicotine, had been shipped to Defendant, Brown & Williamson Tobacco Corporation, that were manufactured at the DNA Plant Technology, in Oakland, California, and based upon these facts, when the FDA's Investigators questioned Defendant, Brown & Williamson Tobacco Corporation concerning it, Defendant "admitted" that it had been developing and manufacturing, "Y-1," high nicotine artifical tobacco, at the DNA Plant Technology, in Oakland, California and it remains on file of David Kessler's report as of this date;

## V. DEFENDANT, LORILLARD TOBACCO COMPANY

76). Based upon discovery, information and belief, on/or about, April 08, 2022, the American Cancer Society, Inc.'s Senior News Editors, as aforesaid, disclosed information and material facts, that Defendant, Lorillard Tobacco Company, kepted concealed, confidential, and "prevented" from the American members of the public, including Plaintiff from knowing and on/or about, September 26, 1977, the major Tobacco Industry Corporation(s), including Defendants, Lorillard Tobacco Company, R.J. Reynolds Tobacco Company, Inc., Phillip Morris USA, Inc., Liggett Group, Inc., The American Tobacco Company, and the Tobacco Institute, Inc., hired Dr. Gary Huber, former Scientist & Chemist Research at the Harvard University to conduct an independant laboratory experiment research regarding smoking, health and disease with mices;

77). Dr. Huber, shaved the dermal skin backs of over 500 mices, obtained tobacco smoke condenstate, and applied it to the shaved dermal skin backs of the mices, and after a period of 6 (six) months to 1 (One) year, the laboratory mices developed emphysema, squamous cell cancer and chronic obstructive pulmonary disease (COPD); afterward, Dr. Huber, had a meeting with major Tobacco Industry Corporations, who hired him, informed them of the outcome results, and stated in part that, "even if a person pass by and inhale second-hand smoke, such person would contract lung disease, and the

ATTACHED SHEET, CONTINUED PAGE TWENTY SIX (26)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PLAINTIFF'S REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

aforesaid Defendants with their outside attorneys jointly agreed to modify or alter Dr. Gary Huber's laboratory findings, should the Dr. Huber's findings reach the media or public's attention, that smoking cigarettes or inhal. second-hand tobacco smoke causes lung cancer and other related disease and the Defendants kepted Dr. Huber's Finding concealed and confidential from the American members of the public, including Plaintiff;

### V. DEFENDANT, PHILLIP MORRIS USA, INC.

**78).** **Based upon discovery, information and belief, on/or about, April 08, 2022,** the American Cancer Society, Inc.'s Senior News Editors, Terry Martin, Stacy Simon, through Sanja Jelic, M.D., it reasonably disclosed information and facts that, Defendant, Phillip Morris USA, Inc., self-concealed, suppressed and "prevented" from the American members of the public, including Plaintiff, and that on/or about, March 15, 1961, Liggett Group, Inc., and its former President, Kinsley V. Dey, hired Dr. Arthur Dehon Little and Dr. Jeffery Harris, as outside Research Scientist and Chemist to conduct an independent research on health, smoking cigarettes and disease, in a method called Project XA;

**79).** Both Dr.(s) Little and Harris, discovered an internal method to "reduce, remove and replace the hazardous carcinogenic constituents, and compound substances in the cigarettes, that would make, develop and design a safer and healthier cigarette called the "Palladium Cataylst cigarette brand; and once Defendant, Phillip Morris USA, Inc., Brown & Williamson Tobacco Corporation, and the Tobacco Institute, Inc.'s Committee counsel, Ernest Peeple, heard about Dr. Little and Harris's success, Defendant, Phillip Morris USA, Inc., took affirmative steps an "threatened" Liggett Group, Inc., "not to make, develop, design and place a "safer and healthier cigarette" in the market places, in the United States and if they (Liggett Group, Inc.) did, Defendant, Phillip Morris USA, Inc., would do every thing in its power and efforts to stop it;"

**79).** That Defendant, Brown & Williamson Tobacco Corporation, and the Tobacco Institute, Inc.'s Committee Counsel, Ernest Peeple, took affirmative measures to "freeze Liggett out of its joint defense agreements

ATTACHED SHEET, CONTINUED PAGE TWENTY SEVEN (27)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PLAINTIFF'S REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

and perhaps "exclude" Liggett Group, Inc., from the Tobacco Institute, Inc., from being a member, as well because, selling and marketing the Project XA Cigarette or the Palladium Catalyst cigarettes would be a public "admission" that Phillip Morris USA, Inc.'s cigarettes would show that, its (Defendant, Phillip Morris USA, Inc.'s) cigarettes on the market are "not a safe product, which would give rise to "massive civil litigation" against the Tobacco Industry Corporations, entirely;"

80). Based upon these facts and threats, Liggett Group, Inc., discontinued its' sales and marketing the Project XA cigarette, and jointly agreed with Defendants, Phillip Morris USA, Inc., Brown & Williamson Tobacco Corporation and The Tobacco Institute, Inc., not to perform research on smoking and health and not to make, develop, and design a "safer cigarette and they further jointly agreed in concerted action, to keep any such information in such nature, confidential and concealed from the American public at large;"

V. <u>THE FOURTH (4TH), ESSENTIAL ELEMENT OF EQUITABLE ESTOPPEL,</u> 4). PLAINTIFF'S LACK OF KNOWLEDGE AND MEANS OF KNOWLEDGE OF TRUTH AS TO FACTS IN QUESTION"

81). Plaintiff hereby, asserts that as a member of the public, and a cigarette smoker, that he lacked knowledge and means of knowledge of truth as to the facts, regarding the aforesaid Defendants' knowledge and affirmative falsity representations, concerning Defendants' individually and collective advertisements and statements, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 14 thru 64, and Paragraph(s) 69 thru 80, hereof; even in the exercised of due diligence and a reasonable diligence, Plaintiff could not have known or foreseeable known, because the aforesaid Defendants of the major Tobacco Industry Corporations as pled, identified in Paragraph(s) 7 thru 13, herein, fif knowingly took affirmative steps and unreasonable measures, using their expert and superior knowledge, expert skills, expert trainings, expert experience, to "prevent, suppress, self-concealed, concealed, omitted, "clandestinely" engaged to disinform, misinform, misrepresentation, maliciously, misdirected the American members of the public, including Plaintiff as a cigarette smoker, from whole knowledge of truth, that

ATTACHED SHEET, CONTINUED PAGE TWENTY EIGHT (28)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
PLAINTIFF'S  REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

smoking cigarettes "does not cause any adverse health affect, lung cancer
or any other related disease, and did knowingly took further affirmative
steps to "destroy relevant materials, medical files, medical adverse health
reports, scientific data information that smoking cigarette causes lung
cancer and ultimately "killed" all their laboratory animals and other
animals, keep the whole knowledge of truth;

82). Defendants' purpose and object are to keep the American members of
the public, including Plaintiff herein, in "ignorance and unknowlegable,
and unaware of the latency risk of dangers, that smoking cigarette causes
cancer and other related disease, and to keep the American members of the
public including Plaintiff, purchasing and smoking Defendants' cigarettes
or tobacco products, to increase Defendant's tobacco products' sales,
individually and collectively, and to "maximize" their own commercial and
corporate profits, rather the interest of the American members of the
public, including Plaintiff's health, safety, life and welfare;


V. THE FIFTH (5TH), ESSENTIAL ELEMENT OF EQUITABLE ESTOPPEL, 5). "PLAINTIFF
     ACTED REASONABLY IN RELIANCE UPON DEFENDANTS" CONDUCT OF WHOM SHOULD BE
                          ESTOPPED"

83). Plaintiff hereby, adopts and incorporates by reference, each and
every factual allegations, pled, identified, set forth as if fully stated
verbatim in Paragraph(s) 14 thru 64; Paragraph(s) 69 thru 80, hereof to
demonstrate as a reasonable inference, that Plaintiff as a member of the
public and a cigarette smoker, acted in good-faith, what the aforesaid
Defendants, individually and collectively affirmative represented as truth
and accuracy and acted reasonably **detrimentally reliance** upon what
Defendants' affirmative represented and what the Defendants' individually
and collectively omitted, and prevented from the American members of the
public, including Plaintiff herein;

V. THE SIXTH (6TH), ESSENTIAL ELEMENT OF EQUITABLE ESTOPPEL, 6). "THE
                    PREJUDICIAL CHANGE OF THE CLAIMING ESTOPPEL"

84). Plaintiff hereby, adopts and incorporates by reference, each and
every factual allegations, as pled, identified, set forth, as if fully

ATTACHED SHEET, CONTINUED PAGE TWENTY NINE (29)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
PLAINTIFF'S  REQUEST TO INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, V.

stated verbatim in Paragraph(s) 14 thru 64; and Paragraph(s) 69 thru 80,
hereof to demonstrate as a reasonable inference, Plaintiff's **prejudicial
changes** as a direct consequence and proximate cause of the Defendants'
foreseeable conduct, including but not limited to, physical, psychological,
emotional addiction, economical,   non-economical serious and permanent
damages and injuries, including chronic coughing, high blood pressure,
hypertension, fatigue, anxiety, asthma, shortage of breath, increase
phlegm, throat irritation, throat scratching, periodontal tooth loss,
wrongful birth defects of low birth weight, eyes deformities, and mandatory
to take prescribed medications, such as Lisiropril 20 mg., Amlodipine 10
mg., loss enjoyment of life, which is separate and distinct, unable to
sleep, insomnia, fear of contracting lung cancer and any other disease; §
15-32-210 et seq.;

### VI. STATEMENT OF THE FACTS
### PLAINTIFF, SEAN DARNELL NELSON

85).  Plaintiff hereby, adopts and incorporates by reference, each and
every factual allegations, pled, identified, described, set forth as if
fully stated verbatim in Paragraph(s) 01 thru 84, hereof and to demonstrate
as a reasonably inference that the aforesaid Defendants' on/or about,
November 09, 2020, did knowingly took affirmative steps to publicly
"admitted," of telling the whole knowledge of truth, of lying and deceiving
the American members of the public, including Plaintiff concerning denying
the facts that smoking cigarettes causes lung cancer and other related
disease for more than over "50 (Fifty) years, and on/or about, April 08,
2022, these aforesaid facts were affirmative disclosed to the Plaintiff;

### VI. STATEMENT OF THE FACTS
### DEFENDANT, R.J. REYNOLDS TOBACCO COMPANY, INC.

86).  Plaintiff hereby, adopts and incorporates by reference, each and
every factual allegations, pled, identified, described, set forth as if
fully stated verbatim in Paragraph(s) 01 thru 84, hereof;

ATTACHED SHEET, CONTINUED PAGE THIRTY (30)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF THE FACTS, VI.

### VI. STATEMENT OF THE FACTS
#### DEFENDANT, BROWN & WILLIAMSON TOBACCO CORPORATION

87). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 01 thru 84, hereof;

### VI. STATEMENT OF THE FACTS
#### DEFENDANT, LORILLARD TOBACCO COMPANY

88). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 01 thru 84, hereof;

### VI. STATEMENT OF THE FACT
#### DEFENDANT, PHILLIP MORRIS USA, INC.

89). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 01 thru 84, hereof;

State, "if more than 1 (One) claim is asserted, number each claim and write a short statement of each claim in a separate paragraph, attached sheet below if needed:

1). Intentional Fraud, 2). Intentional Fraudulent Misrepresentation, 3). Intentional Fraudulent In The Inducement, 4). Civil Conspiracy To Commit Fraud And concealment, 5). Negligent Failure To Warn, 6). Negligent/Grossly Negligent and 7). Radio, Television & Wire Communication Fraud;

VII. FOR A FIRST (1ST), CAUSE OF ACTION FOR INTENTIONAL FRAUD, THE FIRST (1ST), ESSENTIAL ELEMENT OF INTENTIONAL FRAUD, DEFENDANTS' FALSITY REPRESENTATION(S)

90). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, against each Defendants, individually and collectively , as pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 20 thru 61, hereof, to demonstrate as a reasonable

ATTACHED SHEET, CONTINUED PAGE THIRTY ONE (31)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENTS OF A CAUSE OF ACTION, VII.

inference, that Defendants individually and collectively, did knowingly took affirmative steps to represented its tobacco products to the American members of the public, including Plaintiff, herein falsely;

91).    The **Second (2nd), Essential Element of Intentional Fraud, 2).** **"Defendants' Falsity;** Plaintiff hereby, adopts and incorporates, by reference, each and every factual allegations in Paragraph(s) 20 thru 61, hereof; **3).** The **Third (3rd), Essential Element of Intentional Fraud, 3).** **Defendants' Materiality;** Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, in Paragraph(s) 20 thru 61, hereof, to demonstrate as a reasonable inference, what falsity materiality, that Defendants communicated to the American members of the public, including Plaintiff herein; **4).** The **Fourth (4th), Essential Element of Intentional Fraud, 4). Defendants' individually knowledge of its falsity or its reckless disregard of its truth or falsity;** Plaintiff adopts and incorporates by reference, each and every factual allegations in Paragraph(s) 20 thru 61; and Paragraph(s) 69 thru 80, hereof;

92).    The **Fifth (5th),** Essential Element of Intentional Fraud,**5). Defendants' individually intent that its falsity representation be acted upon by the other party;** Plaintiff adopts and incorporates by reference, each and every factual allegations in Paragraph(s) 20 thru 61, hereof to demonstrate as a reasonable inference, the individual Defendants' state or condition of their minds, motives, acted with specific intent to induce, deceive, and defraud the American members of the public, including Plaintiff herein, under Rule 9, of the Federal Rules of Civil Procedure; **6).** The **Sixth (6th), Essential Element of Intentional Fraud, "The Hearer's (Plaintiff) ignorance of Defendants' falsity representation;** Plaintiff adopts and incorporates by reference, each and every factual allegations in Paragraph(s) 20 thru 61, hereof and adopts and incorporates by reference, each and every factual allegations pled in Pargraph(s) 81 and 82, hereof; **7).** The **Hearer's (Plaintiff's) reliance upon the truth;** Plaintiff asserts that acted in good-faith, as what each and every individual Defendants, affirmative represented were truth and accurately, and **acted reasonably detrimentally reliance upon the factual allegations as pled in Paragraph(s) 20 thru 61,** acted reasonably detrimentally upon what the individual

ATTACHED SHEET, CONTINUED PAGE THIRTY TWO (32)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, VIII.

Defendants, intentional omitted, **prevented** from the American members of the public, including Plaintiff herein;

93).  The **Eighth (8th),** Essential Element of Intentional Fraud, 8). "The Hearer's (Plaintiff's) has a justifiably right to act in reliance thereon Defendants'falsity representation; Plaintiff adopts and incorporates by reference each and every factual allegations pled in Paragraph(s) 20 thru 61, hereof to demonstrate as a reasonable inference that, Plaintiff as a hearer had a justifiable right to act reasonably detrimentally reliance upon each and every individual Defendants' **expert or superior knowledge, expert skills, expert training, expert experience, expert judgment,** in the Defendants' individually affirmative representations, in their advertisements and statements to purchase and smoke Defendants' individual tobacco products, as pled, identified, in Paragraph(s) 5 thru 13, hereof and what each individually Defendants' affirmative omitted, prevented, concealed from the American members of the public, including Plaintiff herein;

94). The **Ninth (9th),** Essential element of Intentional Fraud, 9). The Hearer's (Plaintiff's) consequences and proximate cause of acting in good-faith, and acting reasonable detrimentally reliance upon Defendants' indivudally affirmative falsity representations, as pled in Paragraph(s) 20 thru 61, hereof, and to demonstrate as a reasonable inference, that Plaintiff suffered, and sustained physical, psychologically, emotionally, non-economical, economical serious and irreparable damages, injuries including but not limited to, **Chronic coughing,** high-blood-pressure, hypertension, fatigue, anxiety, asthma, shortage of breath, increase phlegm, throat irritation, throat scratching, wrongful birth defects of low birth weight, eyes (pupils) deformities, periodontal tooth loss, blurry vision, gasping for breath, and taking life-time prescribed medication, including but not limited to, **Lisiropril 20 mg.,** Amlodipine 10 mg., and PLaintiff has sleep insomnia, unable to sleep, fear of contracting lung cancer and any other disease, because of the **latency deleterious carcinogenic constituents, and/or compound substances slowly developing and actively developing,** from the Defendants' individually tobacco products that Plaintiff smoked and exposured to for more than 45 (Forty Five) years, even from birth, because both of my parents smoked cigarettes every day,

ATTACHED SHEET, CONTINUED PAGE THIRTY THREE (33)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, VIII.

**prior to my birth, hereof;**

IX). <u>THE SECOND (2ND), CAUSE OF ACTION, FOR INTENTIONAL FRAUDULENT MISREPRESENTATION,</u> "THE FIRST (1ST), ESSENTIAL ELEMENT, **1).** DEFENDANTS' REPRESENTATION"

95). Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, as pled, in Paragraph(s) 20 thru 61, hereof; **2).** The **Second (2nd),** Essential Element, for Intentional Fraudulent Misrepresentation, Defendants' individually Falsity Representation, as pled in Paragraph(s) 20 thru 61, hereof; **3). The Third (3rd),** Essential element for Intentional Fraudulent Misrepresentation, Defendants' individually Materiality, as pled in Paragraph(s) 20 thru 61, hereof; **4). The Fourth (4th),** Essential element for Intentional Fraudulent Misrepresentation, Defendants' individually knowledge of its falsity or reckless disregard of its truth or falsity, as pled in Paragraph(s) 20 thru 61; and Paragraph(s) 69 thru 80, hereof; **5). The Fifth (5th),** Essential element of Intentional Fraudulent Misrepresentation, Defendants' intent that its falsity representation be acted upon by the other party; Plaintiff adopts and incorporates by reference, the factual allegations pled in Paragraph(s) 20 thru 61, hereof to establish Defendants' individually state or condition of their minds, motives, acted with specific intent to induce, deceive, and to defraud the American members of the public, including Plaintiff herein, under **Rule 9,** of the Federal Rule of Civil Procedure;

96). The **Sixth (6th),** Essential element of Intentional Fraudulent Misrepresentation, **"The hearer's (Plaintiff's) ignorance** of Defendants' falsity representation, as pled in Paragraph(s) 20 thru 61, hereof, and Plaintiff hereby, adopts and incorporates as pled in Paragraph(s) 81 and 82, hereof; **7). The Seventh (7th),** essential element of Intentional Fraudulent Misrepresentation, **"The Hearer's (Plaintiff's)** reliance upon the truth, as adopted and incorporates in Paragraph(s) 20 thru 61, hereof, to demonstrate as a reasonable inference that, Plaintiff acted in good-faith, as truthful and accurately, what the individual Defendants' had affirmative represented and took further affirmative steps acted **reasonably detrimentally reliance upon each and every individual Defendants'**

ATTACHED SHEET, CONTINUED PAGE THIRTY FOUR (34)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, IX.

had affirmative represented and what the individual Defendants intentionally omitted, concealed, and prevented from the American members of the public, including PLaintiff herein, as pled in Paragraph(s) 69 thru 80 hereof;

97). The **Eighth (8th),** essential element of Intentional Fraudulent Misrepresentation, "The **Hearer's (Plaintiff's) had a justifiable right to act reasonably detrimentally reliance upon each individual Defendants' affirmative representations, as pled, in Paragraph(s) 20 thru 61,** hereof, and Plaintiff as a hearer had a justifiable right had a justifiable right to act reasonable detrimentally upon what each individual Defendants, intentionally omitted, concealed, self-concealed from the American members of the public, including Plaintiff, herein, as pled in Paragraph(s) 69 thru 80, hereof, and Plaintiff had a justifiable right to act reasonable detrimentally reliance upon Defendants' individually **expert or superior knowledge,** expert skills, expert trainings, expert experience, expert judgment, in publicly advertising and made affirmative statements to induce Plaintiff to purchase and smoke the Defendants' individually tobacco products, and became physically, psychologically, emotionally addictive;

98). The **Ninth (9th),** essential element of Intentional Fraudulent Misrepresentation, The **Hearer's (Plaintiff's) consequence and proximate cause** of acting reasonable detrimentally reliance upon the individual Defendants' falsity representations, Plaintiff as a hearer, suffered and sustained serious and permanent physical, psychological, emotional addiction, including but not limit to, chronic coughing, high-blood pressure, wheezing, hypertension, fatigue, anxiety, asthma, shortage of breath, increase phlegm, throat irritation, throat scratching, wrongful birth defects of low birth weight, gasping for breath, and taking prescribed medications, including but not limited to, Lisiropril 20 mg., Amlodipine 10 mg., etc.

X. THE THIRD (3RD), CAUSE OF ACTION, INTENTIONAL FRAUDULENT IN THE INDUCEMENT

99). The **First (1st),** essential element of Intentional Fraudulent In The

ATTACHED SHEET, CONTINUED PAGE THIRTY FIVE (35)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, X.

Inducement, 1). **"That the alleged fraudfeasor (Defendants individually) made a false representation relating to a present or pre-existing fact,** and Plaintiff hereby, adopts and incorporates by reference, each and every factual allegation as pled in Paragraph(s) 20 thru 61, hereof; **2).** The **Second (2nd),** essential element of Intentional Fraudulent In The Inducement, that "the alleged fraudfeasor (Defendants individually), "intended to deceived the American members of the public, including Plaintiff herein, as pled, set forth in Paragraph(s) 20 thru 61, hereof to show or established the individual Defendants' state or condition of their minds, motives, and acted with knowledge of specific intent to induce, deceive, mislead the American members of the public, including Plaintiff's choice/decision to purchased and smoke their tobacco products, to increase their tobacco products' sales and to maximized their commercial and corporate profits;

100). The **Third (3rd),** essential element of Intentional Fraudulent In The Inducement, 3). "That Plaintiff had a right to rely on the representation, that each individual Defendants affirmative made to the American members of the public, including Plaintiff herein; and Plaintiff adopts and incorporates the factual allegations as pled, in Paragraph(s) 20 thru 61 hereof and Plaintiff **acted reasonable detrimentally reliance upon** each individual Defendants' affirmative representation, and upon their expert and superior knowledge, expert skills, expert trainings and expert experience to purchase and smoke and became physical, psychological and emotionally addictive, and had a right to rely upon what each individual Defendants, knowingly omitted, concealed, self-concealed and prevented from the American members of the public, including Plaintiff herein, as pled in Paragraph(s) 69 thru 80 hereof;

XI. <u>THE FOURTH (4TH), CAUSE OF ACTION, CIVIL CONSPIRACY TO COMMITT FRAUD AND CONCEALMENT,</u> 1 ). THE FIRST (1ST) ESSENTIAL ELEMENT, "A COMBINATION OR AN AGREEMENT BETWEEN TWO (2) OR MORE PERSONS"

101). Plaintiff hereby adopts and incorporates by reference, each and every factual allegations, as pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 20 thru 61, hereof to demonstrate as a reasonable inference that, the individual Defendants' combination or an

ATTACHED SHEET, CONTINUED PAGE THIRTY SIX (36)

PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, X.


agreement to act with specific intent to conspire against the American members of the public, including Plaintiff herein, as pled in Paragraph(s) 69 thru 80 hereof; **2).** The **Second (2nd)** essential element of Civil Conspiracy To Commit Fraud and Concealment, "Defendants' individual and jointly conduct of **committing an unlawful act or lawful act by an unlawful means,** as pled, identified, set forth in Paragraph(s) 20 thru 61; and Paragraph(s) 69 thru 80, hereof; **3).** The **Third (3rd),** essential element of Civil Conspiracy To Commit Fraud and Concealment, **"Together with their commission of an overt act in furtherance of their agreement,"** as pled, set forth in Paragraph(s) 20 thru 61, to demonstrate as a reasonable inference, Defendants' individual commission of an overt act in furtherance of their agreement, in conjunction with Paragraph(s) 69 thru 80 hereof; **4).** The **Fourth (4th),** essential element of Civil Conspiracy To Commit Fraud and Concealment, **"Plaintiff's damages as a proximate cause of Defendants' individual** foreseeable conduct; and Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations of damages, injuries, including but not limited to, **chronic coughing,** wheezing, increase of phlegm, shortage of breath, high-blood pressure, hypertension, throat irritation, throat scratching, fatigue, anxiety, discomfort, asthma, wrongful birth defects of low birth weight, hereof;


XI. <u>THE FIFTH (5TH), CAUSE OF ACTION, NEGLIGENT FAILURE TO WARN AND THE FIRST (1ST), ESSENTIAL ELEMENT, 1). "WHERE THE DEFENDANTS (INDIVIDUALLY) NEGLIGENTLY OR INTENTIONALLY CREATES THE RISKS"</u>

**102).** Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations that, each individually and jointly Defendants did knowingly, took affirmative steps, and negligently and intentionally **created the risk of dangers,** as pled, identified, set forth as if fully stated verbatim in Paragraph(s) 20 thru 61, and Paragraph(s) 69 thru 80, hereof; **2). The Second (2nd),** essential element of Negligent Failure To Warn, **2). "Where a statute imposed a duty on the individual Defendants;"** and Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, as pled, identified, set forth as if fully stated verbatim in Paragraph(s) 14 thru 61; and Paragraph(s) 62 thru 63, hereof;

ATTACHED SHEET, CONTINUED PAGE THIRTY SEVEN (37)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, XI.

**103).** The **Third (3rd),** essential element of Negligent Failure To Warn, **3).** **"Where the Defendants' individually and jointly, "voluntarily undertook a duty,"** and Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 20 thru 23; Paragraph(s) 24 thru 61; and Paragraph(s) 69 thru 80, hereof; and Paragraph(s) 62 and 63, hereof;

XII.   THE SIXTH (6TH), CAUSE OF ACTION, NEGLIGENT GROSSLY NEGLIGENT, **1).**
         FIRST (1ST), ESSENTIAL ELEMENT, "THAT DEFENDANTS (INDIVIDUALLY) HAD
                                    A DUTY"

**104).**   Plaintiff hereby, adopts and incorporates by reference, each and every factual allegation, as pled, identified, set forth as if fully stated in Paragraph(s) 62 and 63, hereof to demonstrate as a reasonable inference that, the Defendants individually had a duty, under the South Carolina Unfair Trade & Commercial Practice Act of § 39-1-20 et seq., to not to **"knowingly and intentionally make untrue statements of material facts, herein; 2).** The **Second (2nd), Essential element** of **Negligent/Grossly Negligent**, that the Defendants individually **breached the Statutory Duty and responsibilities** of § 39-1-20 et seq., by knowingly took affirmative steps and unreasonable measures, knowingly and intentionally made affirmative false advertismens and statements of material facts to the American members of the public, including Plaintiff herein, as pled, identified, set forth as if fully stated verbatim in Paragraph(s) 20 thru 61; and Paragraph(s) 69 thru 80, hereof, by violating the aforesaid Statute, by failure to exercised a duty of care, to the American members of the public, including Plaintiff herein;

**105).** The **Third (3rd),** essential element of Negligent/Grossly Negligent, "Plaintiff's damages as proximately cause of Defendants' individually breach of duty, by knowingly and and intentionally made untrue statements of a material facts to the American members of the public, including Plaintiff herein, which reasonably constitutes as a failure to exercise a duty of care to the American members of the public, including PLaintiff herein and Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations of Plaintiff's damages and injuries, as pled,

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Chronic coughing, high-blood pressure, hypertension, asthma, shortage of breath, gasping for breath, increase phlegm, periodontal tooth loss, wrongful birth defects, of low birth weight, deformities of eye (pupils), throat irritation, throat scratching, fatigue,anxiety, (See, Attached Sheet(s)

(SEE, ATTACHED SHEET(S)

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

INVOKE THE EQUITABLE ESTOPPEL DOCTRINE, WHEN DEFENDANTS' PLEAD THEIR AFFIRMATIVE DEFENSE OF STATUTORY OF LIMITATIONS PERIOD, AND PLAINTIFF'S SEEKS, $ 100,000,000.00 (ONE HUNDRED MILLION) DOLLARS FOR COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, AGAINST EACH INDIVIDUAL DEFENDANTS' FORESEEABLE KNOWLEDGE OF THE LATENCY AFFECTS OF EXPOSURE TO DELETERIOUS OF TOXINS, CARCINOGENIC CONSTITUENTS, COMPOUND SUBSTANCES, SPRAYED, BLENDED MIXED WITH NATURAL TOBACCO FOR MORE THAN OVER 45 (FORTY FIVE) YEARS, AND FAILED TO AVOID IT, AS A REMEDY MEASURE;"

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

6

ATTACHED SHEET, CONTINUED PAGE THIRTY EIGHT (38)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
ELEMENT OF A CAUSE OF ACTION, XII.

identified, set forth as if fully stated verbatim in Paragraph 96, hereof, including but not limited to, Chronic coughing, high-blood pressure, hypertension, shortage of breath, gasping for breath, mental stress, mental shock, asthma, throat irritation, throat scratching, wrongful birth defects of low birth weight, hereof;

## XIV).    THE SEVENTH (7TH), CAUSE OF ACTION, RADIO, TELEVISION, WIRE COMMUNICATION FRAUD"

**106).** Plaintiff hereby, adopts and incorporates by reference, each and every factual allegations, that Defendants individually did knowingly, willfully and unlawfully took affirmative steps to commit radio, televised and communicated wire fraud, as pled, identified, described, set forth as if fully stated verbatim in Paragraph(s) 20 thru 61; and Paragraph(s) 69 thru 80 hereof;

## XV. RELIEF OF DAMAGES

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amount of any actual damages **and/or** punitive damages claimed for the acts alleged. Explain the basis for these claims.

## XV). FOR RELIEF OF DAMAGES FOR THE FIRST (1ST), CAUSE OF ACTION OF INTENTIONAL FRAUD AGAINST THE INDIVIDUAL DEFENDANT(S)

**107).** Plaintiff request the Court to grant in his favor for the relief of compensatory damages in the amount of $ 100,000,000.00 (One Hundred Million) dollars, against each individually Defendants, for the First (1st) Cause of Action for Intentional Fraud, on the basis of Plaintiff's permanent damages and injuries sustained and continued to sustain and because of the latency deleterious carcinogenic constituents that Plaintiff has been and will forever possess in his bodily organs; and Plaintiff request this Court for punitive damages, as a foreseeable consequence of Defendants individually conduct that reasonably exhibited knowingly, wilfullness, maliciousness, wantonousness, recklessness, deprived and denied Plaintiff's of his legal rights of his health, safety, life and

ATTACHED SHEET, CONTINUED PAGE THIRTY NINE (39)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
STATEMENT OF CLAIM, IV.
RELIEF FOR DAMAGES, XV.

and welfare, for more than over 45 (Forty Five) years, having possession of the whole knowledge of truth;

## XV.    FOR RELIEF OF DAMAGES FOR THE SECOND (2ND), CAUSE OF ACTION, INTENTIONAL FRAUDULENT MISREPRESENTATION AGAINST THE INDIVIDUAL DEFENDANT(S)"

**108).** Plaintiff request the Court to grant in his favor, for the relief of compensatory damages in the amount of $100,000,000.00 (One Hundred Million) dollars, against **each individual Defendants** for the Second (2nd), Cause of Action, of Intentional Fraudulent Misrepresentation and on the basis of Plaintiff suffered and will continued to forever to suffered permanent damages, and injuries, because of the latency deleterious carcinogenic constituents that Plaintiff has been exposed and will continue to be exposure to, because the latency deleterious carcinogenic constituents dwells in Plaintiff's bodily organs, that in the near future develop into cancer and other related diseases; and Plaintiff request the Court for punitive damages as a direct and foreseeable consequence and proximate cause of Defendants' individually conduct that exhibited knowingly, wilfulness, maliciousness, wantonousness, for acting with deliberate indifference to Plaintiff's legal protected interest and rights to his health, safety, life and welfare, which could have been avoided;

## XV.    FOR RELIEF OF DAMAGES FOR THE THIRD (3RD), CAUSE OF ACTION, INTENTIONAL FRAUDULENT IN THE INDUCEMENT, AGAINST THE INDIVIDUAL DEFENDANT(S)"

**109).** Plaintiff request the Court to grant in his favor, for the relief of compensatory damages in the amount of $ 100,000,000.00 (One Hundred Million) dollars, against **each individual Defendants** on the basis of their Cause of Action for Intentional Fraudulent In The Inducement, and on the basis that, Plaintiff has in the past, present and will as a medical future certainty will suffer, and forever suffer damages and injuries as a proximate cause of been exposure to the **latency deleterious carcinogenic constituents,** that were affirmative sprayed, blended and mixed with **"natural tobacco,"** to design its cigarettes and tobacco products, that Plaintiff purchased and smoked; Plaintiff request the Court for punitive damages in an amount to be determined by the Court through jurors, and a

ATTACHED SHEET, CONTINUED PAGE FORTY (40)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, # 141070
PLAINTIFF'S REQUEST FOR RELIEF OF DAMAGES, XV.

direct cause of the individual Defendants' foreseeable conduct, that affirmative **exhibited** conduct of knowingly, wilfullness, wantonousness, maliciousness, and acted with deliberate indifference to Plaintiff's legal protected interest and legal rights to his health, safety, life and welfare, which Defendants' knew, could have been avoided, if each individual Defendants would have took heed and warnings by their own scientists;

## XV. FOR THE RELIEF OF DAMAGES FOR THE FOURTH (4TH), CAUSE OF ACTION, CIVIL CONSPIRACY TO COMMIT FRAUD AND CONCEALMENT, AGAINST THE INDIVIDUAL DEFENDANTS"

110). Plaintiff request the Court to grant in his favor, for the relief of compensatory damages in the amount of $ 100,000,000.00 (One Hundred Million) dollars, against the individual Defendants, and relief of compensatory damages in the amount of $ 50,000,000.00 (Fifty Million) dollars against the Defendants jointly, on the basis of their Civil Conspiracy To Commit Fraud and Concealment, and on the basis of Plaintiff has in the past, present and will continued to suffered serious permanent damages and injuries, based upon Plaintiff has been exposed to the **latency affects of the deleteious carcinogenic constituents, as a long-time cigarette smoker** and because the individually Defendants and jointly knew that smoking caused lung cancer but prevented the American members of the public, including Plaintiff from knowing the whole truth for more than over 45 (Forty Five) years, in their possession, control, custody and supervision;

111). Plaintiff request the Court for punitive damages against, each individual Defendants, for exhibiting foreseeable conduct of knowingly, wilfullness, maliciousness, wantonousness, and acted with deliberate indifference to Plaintiff's legal protected interest and legal rights to his health, safety, life and welfare, which the Defendants, individually and jointly knew, could have been avoided;

## XV. FOR THE RELIEF OF DAMAGES FOR THE FIFTH (5TH), CAUSE OF ACTION, NEGLIGENT FAILURE TO WARN, AGAINST THE DEFENDANTS INDIVIDUALLY"

ATTACHED SHEET, CONTINUED PAGE FORTY ONE (41)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
PLAINTIFF'S REQUEST FOR RELIEF OF DAMAGES, XV.

112). Plaintiff request the Court to grant in his favor, for the relief of compensatory damages in the amount of $ 100,000,000.00 (One Hundred Million) dollars, against each individual Defendants, on the basis of "Negligent Failure To Warn, based upon the past, present and with medical future certainty, continue to suffer and sustain, serious permanent physical, psychological, emotional damages and latency injuries, as a consequent of long-time exposure to the deleterious carcinogenic constituents that the individual Defendants "sprayed, blended and mixed" with natural tobacco and knowingly took affirmative steps in negligent failure to warn, Plaintiff of the serious latency risk of dangers, as pled, identified in Paragraph(s) 20 thru 80, hereof, for over more than 45 (Forty Five), years of foreseeable knowledge of the dangers;

113). Plaintiff respectfully request this Court to grant him punitive damages in an amount to be determined by this Court through jury, because of each individually Defendants' conduct, affirmative exhibited knowingly, wilfullness, wantonousness, maliciousness, recklessness and acted with deliberate indifference to Plaintiff's health, safety, life and welfare and to Plaintiff's legal protected interest and rights, which could have been avoided;

## XV.) FOR THE RELIEF OF DAMAGES OF THE SIXTH (6TH), CAUSE OF ACTION, FOR NEGLIGENT/GROSSLY NEGLIGENT"

114). Plaintiff request this Honorable Court to grant in his favor for the relief of compensatory damages in the amount of $ 100,000,000.00 (One Hundred Million) dollars, against each individual Defendants, on the basis of their Negligence/Grossly Negligence conduct, supervision, responsibilities and duties, as pled in Paragraph(s) 20 thru 80, hereof, and for the past, present and future, physical, psychological and emotional serious and permanent damages, injuries to the extent, Plaintiff will with medical future certainty, continue to take life-time prescribed medications, because of long-time exposure to the deleterious carcinogenic constituents "knowingly sprayed, mixed and blended with natural tobacco, which the deleterious carcinogenic constituents, affirmative has an "latency affects" inside Plaintiff's bodily organs, that will naturally and probable develop into cancer, beginning with a consistent cough;

ATTACHED SHEET, CONTINUED PAGE FORTY TWO (42)
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
PLAINTIFF'S REQUEST FOR RELIEF OF DAMAGES, XV.

115). Plaintiff respectfully request this Court for punitive damages in an
amount to be determined by this Court through jurors, because of each
individual Defendants' foreseeable conduct, that affirmative "exhibited"
knowingly, wilfullness, wantonousness, maliciousness, Grossly Negligence,
recklessness, and acted with deliberate indifference to Plaintiff's legal
protected interests, legal rights to his health, safety, life and welfare,
which they (individual Defendants) knew could have been avoided;

XV. FOR THE RELIEF OF DAMAGES OF THE SEVENTH (7TH), CAUSE OF ACTION, FOR
    RADIO, TELEVISED AND WIRE COMMUNICATION FRAUD"

116). Plaintiff request this Honorable Court to grant in his favor, for the
relief of compensatory damages in the amount of $ 50,000,000.00 (Fifty
Million) dollars, against each individually Defendants, on the basis of
their knowingly and wilfully took affirmative steps and unreasonable
measures to communicated their advertisements and statements deceptively,
through inducement and falsely in their individual radio, televised
commercials, without taking affirmative steps to acknowledge and admit
, correct and withdraw from their continously wrongful conduct to the
American members of the public, including Plaintiff, herein proximately
caused Plaintiff to suffer and continue to sustain serious and permanent
damages and life-time injuries, as a foresseable conduct of exposing
Plaintiff to deleterious carcinogenic constituents, that affirmative has
"life-time latency affect, developing into cancerous and fatal affect upon
Plaintiff's bodily organs, within 25 (Twenty Five) years;

117). Plaintiff hereby, respectfully request this Court for punitive
damages in an amount to be determined by jurors through this Court, due to
and against each individual Defendants' foreseeable conduct that,
"exhibited facts" of knowingly, wilfullness, wantonousness, maliciousness,
Grossly Negligence, recklessness and knowingly took affirmative steps to
act with deliberate indifference to Plaintiff's legal protected interests
and to his rights to health, safety, life and welfare, which they knew
could have been avoided;

WHEREFORE, for the foregoing reasons, as pled, set forth Plaintiff

ATTACHED SHEET, CONCLUSION PAGE FORTY THREE (43)
PLAINTIFF'S  REQUEST FOR RELIEF OF DAMAGES, XV.
PROPOSED PRO'SE PLAINTIFF, SEAN DARNELL NELSON, #141070
DATED: APRIL 19, 2022


respectfully request and prays that this Honorable Court to grant the
relief sought and grant any other necessary relief, deems just and proper.


                              Respectfully submitted,  I am
                         S/

RICHLAND COUNTY,              SEAN DARNELL NELSON, # 141070
                         C/O  BROAD  RIVER  CORRECTIONAL   INST.
COLUMBIA, SOUTH CAROLINA 29210.   MARION UNIT, A-WING ROOM
                              4460  BROAD RIVER ROAD
THIS 19TH DAY OF APRIL, 2022.   COLUMBIA, SOUTH CAROLINA
                              ZIP CODE             29210-4012

                              PLAINTIFF'S PRO'SE COMPLAINT
                              ATTACHED SHEET(S)

If no, give the approximate date of disposition. **Unknown    At    This    Time"**

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

**"AFFIRMED AND DISMISSED, NO JUDGMENT WAS NOT RULED IN MY FAVOR"**

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 7-27 , 2022.

Signature of Plaintiff

Printed Name of Plaintiff    **SEAN DARNELL NELSON**

Prison Identification #    **SCDC PRISONER'S NUMBER: # 141070**

Prison Address    **BROAD RIVER CORRECTIONAL INSTITUTION (BRCI)**
**MARION UNIT, A-WING RM., RICHLAND COUNTY**
**4460 BROAD RIVER ROAD, COLUMBIA, SOUTH CAROLINA**

City    State    Zip Code

### B.    For Attorneys    **29210-4012**

Date of signing: _____ , 20__ .

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

12